UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMBER F.,[1]

                       Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

_____

DECISION & ORDER

22-CV-6128MWP

## PRELIMINARY STATEMENT

Plaintiff Amber F. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.    Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

>   (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
>   (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 22, 2018, the alleged onset date. (Tr. 54-55).[2] In making this finding, the ALJ noted that plaintiff had engaged in work activity after her onset date but found that the activity did not rise to the level of substantial gainful activity. (*Id.*). At step two, the ALJ concluded that plaintiff suffered from several medically-determinable impairments including: eosinophilic esophagitis, bradychardia, hiatal hernia, allergic rhinitis, hypothyroidism, sleep disordered breathing, obesity, adjudgment disorder with mixed anxiety and depressed mood, and a history of alcohol abuse. (Tr. 55-58).

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

The ALJ determined, however, that none of these impairments, whether considered by themselves or in combination, significantly limited plaintiff's ability to perform basic work-related activities. (*Id.*). In making this finding, the ALJ considered the four broad categories of mental functioning. (*Id.*). Specifically, the ALJ determined that plaintiff had mild limitations in her ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and, adapt and manage herself. (*Id.*). Accordingly, the ALJ determined that none of the impairments were severe. (*Id.*). Because plaintiff did not have a severe impairment or combination of impairments, the ALJ concluded that she was not disabled. (*Id.*).

### III.     Plaintiff's Contentions

Plaintiff's sole challenge is that the Appeals Council failed to properly consider an opinion by Shirley Wright, a licensed clinical social worker who provided counseling to plaintiff for several months during the relevant period. (Docket ## 9, 11). Wright's opinion, dated March 27, 2019 – more than a year prior to the ALJ's decision – was submitted by plaintiff after the ALJ's decision, but prior to the Appeals Council's denial of her request for review of that decision.[3] (Tr. 2, 65-66). In its denial, the Appeals Council acknowledged receipt of Wright's opinion, but concluded that it did not "show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 2). The Appeals Council "did not exhibit" Wright's opinion, and it denied plaintiff's request for review of the ALJ's decision. (Tr. 1-2).

---

[3] Plaintiff submitted additional material to the Appeals Council. (Tr. 2). Because plaintiff does not challenge the Appeals Council's consideration of that other evidence, it is not discussed herein.

IV.     **Administrative Record**

At the time of the ALJ's decision, the record contained three medical opinions assessing plaintiff's mental work-related functioning.[4] (Tr. 115-26, 141-53, 652-56). The first, an opinion by state examining consultant Amanda Slowik, PsyD, dated September 9, 2019, indicated that plaintiff was able to understand, remember, and apply simple and complex directions and instructions, use reason and judgment to make work-related decisions, and maintain personal hygiene. (Tr. 652-56). According to Slowik, plaintiff was mildly limited in her ability to interact adequately with supervisors, coworkers, and the public, sustain concentration, and regulate emotions. (*Id.*). During the evaluation, plaintiff reported that she had difficulty falling asleep and that she suffered from both depression and anxiety. (*Id.*). Plaintiff indicated that her anxiety was characterized by racing thoughts, increased motivation, and nausea. (*Id.*). According to plaintiff, she did not experience any "major symptoms of depression." (*Id.*). Plaintiff reported that she generally was "able to push through" symptoms from both anxiety and depression. (*Id.*).

On October 9, 2019, state agency non-examining consultant O. Fassler, PhD, opined that plaintiff suffered from mild limitations in her ability to understand, remember and apply information, interact with others, concentrate, persist, and maintain pace, and adapt and manage herself. (Tr. 115-26). Fassler further opined that plaintiff's mental impairments were not severe. (*Id.*). On December 31, 2019, state agency non-examining consultant T. Inman-Dundon, PhD, likewise opined that plaintiff suffered from mild limitations in her

---

[4] Plaintiff's contentions relate only to the mental component of the ALJ's determination. Therefore, I address evidence only as it relates to plaintiff's mental impairments. *See*, *e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

ability to understand remember and apply information, interact with others, concentrate, persist, and maintain pace, and adapt and manage herself.  (Tr. 141-53).  Like Fassler, Inman-Dundon opined that plaintiff's mental health impairments were not severe.  (*Id.*).

The ALJ found these opinions persuasive.  (Tr. 56-58).  According to the ALJ, Slowik's opinion was supported by her generally "benign" evaluation of the plaintiff.  (*Id.*).  Further, the ALJ found the opinions of all the consultants were "supported by a detailed narrative rationale . . . [that] cite[d] supporting objective medical evidence from the record."  (*Id.*).  Additionally, the ALJ found the limitations assessed in the opinions were consistent with the overall record, including plaintiff's minimal mental health treatment and her ability to engage in significant activities of daily living.  (*Id.*).

The record also included treatment notes from plaintiff's treatment at Steuben County Mental Health Clinic ("SCMHC").  (Tr. 584-643).  Those records indicate that plaintiff was referred to mental health treatment by her treating nurse practitioner.  (Tr. 590).  On February 11, 2019, plaintiff attended an intake evaluation with a Robin Richardson, a licensed clinical social worker.  (Tr. 604).  Plaintiff requested treatment for depression and anxiety.  (Tr. 599).  Plaintiff reported that she lived alone with her twelve-year-old daughter, who was disabled.  (Tr. 590, 596).  According to plaintiff, she was currently homeless after leaving a residence she had shared with a friend.  (Tr. 590).  Plaintiff indicated that her friend was abusing prescription drugs and that she did not believe that residence was a positive environment for her daughter.  (*Id.*).  Upon examination, Richardson assessed that plaintiff's mental status was essentially normal, although she presented as mildly depressed.  (Tr. 599).

On February 21, 2019, plaintiff placed an emergency call to SCMHC due to feeling overwhelmed with her living situation and an ongoing dispute with her former roommate.

(Tr. 605-607, 630). At the time, plaintiff spoke with licensed mental health counselor Ruth Van Wie. (*Id.*). Plaintiff reported that she was currently residing in a motel and wanted to file harassment charges against her former roommate. (*Id.*).

Approximately one month later, on March 25, 2019, plaintiff attended an unscheduled emergency session with Robert Burns, a different licensed clinical social worker at SCMHC.[5] (Tr. 608-10, 631). Plaintiff recounted her ongoing dispute with her former roommate, indicating that it was causing her anxiety and had prompted two hospital visits for anxiety-related symptoms. (*Id.*). According to plaintiff, although the police had told her former roommate to cease communicating with plaintiff, the former roommate had contacted her that day. (*Id.*). Burns encouraged distraction techniques and provided advice concerning orders of protection. (*Id.*).

On March 27, 2019, plaintiff attended her first scheduled in-person screening appointment with Wright, who had been assigned as plaintiff's therapist. (Tr. 632). During the session, plaintiff presented as mildly anxious and requested a referral to care management services. (*Id.*). Plaintiff reported that she was living with her autistic child in an apartment building with difficult tenants who caused "drama" and provoked plaintiff's anxiety. (*Id.*). Wright agreed to refer plaintiff to care management services. (*Id.*). She also agreed to give plaintiff "a DSS work waiver for a 6 month period." (*Id.*).

Plaintiff attended another appointment with Wright on May 9, 2019. (Tr. 635). She presented with a euthymic mood and affect and reported that she had spent the previous day at the Special Olympics with her daughter. (*Id.*). Plaintiff reported that she had recently moved

---

[5] The treatment notes for the February 21 and March 25 unscheduled sessions suggest that plaintiff spoke with Van Wie and Burns, although the notes also contain a notation that plaintiff was "seen by" Wright. (Tr. 605-10, 630-31). Whether it was Wright or another staff member who conducted these sessions is immaterial to this determination.

to a new apartment and that her primary stressor was her inability to visit her son, who lived some distance away. (*Id.*). Plaintiff attended another session with Wright on July 3, 2019. (Tr. 642). She reported having recently traveled with her ex-boyfriend and her daughter to New Jersey. (*Id.*). During the appointment, plaintiff presented as mildly depressed and expressed concerns regarding her ex-boyfriend's lack of boundaries. (*Id.*).

On July 24, 2019, plaintiff attended her final appointment with Wright. (Tr. 643). During the session, she presented with a euthymic mood and affect. (*Id.*). Plaintiff reported that she was feeling good about her decision-making and that there was nothing for her to discuss during the therapy session. (*Id.*). Wright commended plaintiff's progress and suggested terminating therapy because plaintiff consistently reported satisfaction with her life. (*Id.*). Plaintiff agreed, and she was discharged from treatment because she had met her treatment goals and no longer needed services. (Tr. 624-26, 643). In the discharge summary, Wright noted that after plaintiff had moved into her own apartment, she was less anxious, depressed, and irritable. (*Id.*). According to Wright, at the time of her discharge, plaintiff was able to maintain a moderated mood and effectively manage life stressors. (*Id.*).

On October 27, 2020 – following the ALJ's decision, but prior to the Appeal Council's denial of review – plaintiff, through new counsel, submitted additional evidence to the Appeals Council and requested review of the ALJ's decision. (Tr. 361-62). Included in the additional information was a medical examination form submitted by Wright to the Steuben County Department of Social Services. (Tr. 65-66). The form was completed on March 27, 2019, the same day as plaintiff's first in-person session with Wright. (*Id.*). In the form, Wright indicated that plaintiff was a new patient, who endorsed symptoms of anxiety and depression. (*Id.*).

9

According to Wright, plaintiff was moderately limited in her ability to remember instructions,[6] maintain attention and concentration, and interact appropriately with others. (*Id.*). Wright opined that plaintiff had no limitations in her ability to carry out instructions, make simple decisions, and maintain basic standards of hygiene. (*Id.*). Regarding plaintiff's ability to maintain socially appropriate behavior without exhibiting behavioral extremes, Wright wrote, "Depends on situation." (*Id.*). With respect to plaintiff's ability to function in a work setting at a consistent pace, Wright wrote, "Unknown." (*Id.*). Wright indicated that plaintiff was unable to work, although she also indicated that additional assessment was needed to determine plaintiff's needs. (*Id.*).

V. **Analysis**

Pursuant to relevant regulations, the Appeals Council will consider additional evidence submitted by a claimant if it is "new, material, and relates to the period on or before the date of the [ALJ's] decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[7]

---

[6] Wright checked a box for moderate limitations in the category of "understands and remembers instructions," but she circled only the phrase "remembers instructions." (*Id.*).

[7] These regulations were amended effective January 17, 2017, with compliance required beginning on May 1, 2017. *See* 20 C.F.R. §§ 404.970(a)(5) (2016), 416.1470(a)(5) (2016); 81 Fed. Reg. 90987-01 (Dec. 16, 2016). The regulations were subsequently amended effective December 16, 2020. *See* 20 C.F.R.§§ 404.970(a)(5) (2020), 416.1470(a)(5) (2020); 85 Fed. Reg. 73157 (Nov. 16, 2020). Prior to the amendments effective January 17, 2017, the Appeals Council considered new and material evidence relating to the period before the ALJ's decision in conjunction with the entire record to determine whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *See* 20 C.F.R. §§ 404.970(b) (1987), 416.1470(b) (1987).

As amended, the regulations require the Appeals Council to consider newly-submitted evidence only if the claimant establishes "good cause" for not providing the information earlier. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In this case, the Appeals Council did not indicate that it was declining to consider the newly-submitted evidence due to plaintiff's failure to demonstrate good cause. (Tr. 2). Moreover, the Commissioner has not opposed plaintiff's request for remand on the grounds that plaintiff lacks good cause for not having submitted Wright's opinion earlier. (Docket # 10). Accordingly, this Court declines to address the "good cause" requirement. *See Bridget P. v. Comm'r of Soc. Sec.*, 2023 WL 2402782, *9 (N.D.N.Y. 2023) ("[d]istrict courts in the Second Circuit

"Evidence is 'new' when it has not been considered previously in the administrative process," *Pferrer-Tuttle v. Colvin*, 2015 WL 5773524, *5 (W.D.N.Y. 2015), and when it is "not cumulative of what is already in the record," *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263, *3 (W.D.N.Y. 2019).  Evidence is "material" when it is "relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently."  *Pennetta v. Comm'r of Soc. Sec.*, 2019 WL 156263 at *3 (citing *Webb v. Apfel*, 2000 WL 1269733, *14 (W.D.N.Y.), *report and recommendation adopted by*, 2000 WL 1209385 (W.D.N.Y. 2000)); *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("[n]ew evidence is 'material' if it is both (1) 'relevant to the claimant's condition during the time period for which benefits were denied' and (2) 'probative'[;] . . . [t]he concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently") (brackets and citation omitted).

"If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision," although the "[n]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review."  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)).  The reviewing court's task then is to determine "whether substantial evidence supports the ALJ's decision[] when the new evidence is included in the administrative record."  *Ryder v. Colvin*, 2015 WL 9077628, *4 (W.D.N.Y. 2015).

Plaintiff's challenge to the Appeals Council's denial is twofold.  (Docket # 9-1). First, plaintiff maintains that the Appeals Council erred by summarily rejecting the opinion of

---

have declined to address the 'good cause' requirement where the Appeals Council did not assert it as a reason for declining to review new evidence").

11

her treating social worker without first discussing the supportability and consistency factors pertaining to medical opinion evidence outlined in applicable regulations. (*Id.*). Second, plaintiff maintains that the Appeals Council improperly determined that there was no reasonable probability that consideration of Wright's opinion would have changed the outcome of the ALJ's determination. (*Id.*).

As an initial matter, the regulations do not explicitly require the Appeals Council to provide a detailed rationale for declining to review an ALJ's decision, and numerous courts have determined that extensive explanation is not required. *See Johnmark C. v. Comm'r of Soc. Sec.*, 2023 WL 6977430, *12 (W.D.N.Y. 2023) ("the regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented[;] . . . the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision") (citing 20 C.F.R. §§ 404.967, 404.970); *Lashunda T. o/b/o J.P. v. Comm'r of Soc. Sec.*, 2023 WL 2071478, *6 n.5 (W.D.N.Y. 2023) ("the wording of the regulations on their face require only that the Appeals Council notify the parties of its action and do not mention any other information that must be in the denial notice[,] . . . and the Second Circuit has recognized that the Appeals [Council's] denial of a request for review is analogous to a denial of certiorari") (internal quotations and citations omitted); *Tammy S. o/b/o A.L.S. v. Comm'r of Soc. Sec.*, 2022 WL 1488431, *5 (W.D.N.Y. 2022) ("the Appeals Council was not required to provide an explanation of why the later-submitted evidence did not necessitate review of the ALJ's determination beyond the Appeals Council's statement that the evidence did not show a reasonable probability that it would change the outcome of the decision"). Although several courts, including those cited by plaintiff, have required the Appeals Council to provide a fuller explanation when considering newly-submitted opinions subject to

12

the treating physician rule, *see*, *e.g.*, *Lorsandra D. W. v. Comm'r of Soc. Sec.*, 2021 WL 1139852, *5 (W.D.N.Y. 2021) (applying treating physician rule), the treating physician rule is not applicable in this case, as plaintiff herself acknowledges (Docket # 9-1 at 9).  Accordingly, the cases cited by plaintiff are inapposite.  *See Lavette M. v. Comm'r of Soc. Sec.*, 2022 WL 17247243, *4-5 (W.D.N.Y. 2022) (distinguishing cases applying treating physician rule).

In any event, even assuming the Appeals Council erred by failing to provide a more detailed explanation, such error would not warrant remand because there is no reasonable probability that consideration of Wright's opinion would have altered the ALJ's decision.  *See Lashunda T. o/b/o J.P. v. Comm'r of Soc. Sec.*, 2023 WL 2071478 at *6 ("[e]ven if the Appeals Council should have discussed this evidence, any error is harmless because the evidence did not show a reasonable probability of changing the ALJ's decision"); *George W. v. Comm'r of Soc. Sec.*, 2022 WL 3320866, *4 (W.D.N.Y. 2022) ("the [Appeals Council] does not err by declining to review an ALJ's decision and is not required to give a detailed explanation for its decision[] when the newly-submitted evidence does not dramatically alter the weight of the evidence"); *Tammy S. o/b/o A.L.S. v. Comm'r of Soc. Sec.*, 2022 WL 1488431 at *5 ("[e]ven assuming the Appeals Council erred by refusing to consider new evidence, a reviewing court is able to review the entire record and determine whether the same conclusion is warranted even if the evidence at issue had been considered").  Plaintiff disagrees, maintaining there is no requirement to demonstrate that Wright's opinion would alter the ALJ's decision.  (Docket # 9-1 at 12) ("[p]laintiff does not need to prove that new evidence will change the previous determination").  Rather, she maintains that she is only required to demonstrate that the new evidence is "relevant and probative."  (*Id.*).  Plaintiff's contention, however, ignores the explicit language of the applicable regulations, as well as applicable caselaw.  *See*, *e.g.*, 20 C.F.R. § 404.970(a)(5)

13

(requiring Appeals Council review only if evidence is new, material, relates to the relevant time period and "there is a *reasonable probability* that the additional evidence *would change the outcome of the decision*") (emphasis added); *Porteus v. O'Malley*, 2024 WL 2180203, *4 (2d Cir. 2024) (summary order) (new evidence presented to Appeals Council did not warrant remand; "[w]e conclude that [the new opinion] does not add so much as to make the ALJ's decision contrary to the weight of the evidence") (internal quotations omitted); *Gauda v. Comm'r of Soc. Sec.*, 2024 WL 886595, *3 (2d Cir. 2024) (summary order) ("[t]he [c]ourt finds no reason to conclude, even considering [the new opinion evidence], that there is a lack of substantial evidence to support the Commissioner's decision"); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014) (summary order) ("[t]he Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that [plaintiff] presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case").

In this case, although Wright's opinion is "new" inasmuch as it was not contained in the record before the ALJ, the information reflected in the opinion is largely cumulative of and consistent with the information contained in Wright's treatment notes, which were included in the administrative record prior to the ALJ's decision. While Wright's opinion indicated her belief that plaintiff was unable to work and assessed some moderate limitations in plaintiff's ability to interact with others and maintain attention, that same information was contained in her own treatments notes, which were reviewed by the ALJ. Indeed, Wright's opinion was dated March 27, 2019, the date on which she first met in-person with plaintiff for a scheduled counseling session. (Tr. 65-66). According to the treatment notes from that date, Wright agreed to provide plaintiff with a temporary "DSS work waiver" for a period of six months. (Tr. 632). Thus, Wright's opinion that plaintiff was temporarily unable to work was part of the record

14

considered and reviewed by the ALJ. *See Johnmark C. v. Comm'r of Soc. Sec.*, 2023 WL 6977430 at *13 ("[the new opinion] adds little of note which the ALJ had not already considered").

Moreover, Wright's opinion "does not provide information that would undermine a finding that the ALJ's decision is based on substantial evidence." *See Lavette M. v. Comm'r of Soc. Sec.*, 2022 WL 17247243 at *6. As an initial matter, Wright authored her opinion the same day as her first in-person treatment session, thus weakening any suggestion that Wright had a substantial treating relationship with plaintiff when she opined on plaintiff's ability to work. Wright's opinion itself underscores the absence of a developed treating relationship. For example, Wright acknowledged on the form that plaintiff was "new to writer" and that further assessment was necessary for her to be able to identified plaintiff's "needs." (Tr. 66). Indeed, with respect to the issue of plaintiff's ability to function in a work setting at a consistent pace, Wright answered, "Unknown." (*Id.*). Moreover, the record reflects that Wright met with plaintiff only three more times before determining that she no longer required mental health treatment. (Tr. 635, 642-43).

Importantly, Wright's opinion that plaintiff was unable to work and that she suffered from moderate functional limitations is not supported by her longitudinal treatment notes or consistent with the other evidence of record. *See Gauda v. Comm'r of Soc. Sec.*, 2024 WL 886595 at *3 (new opinion was contradicted by evidence in the record including consultative opinions, benign mental status examinations, and plaintiff's self-report regarding ability to manage her symptoms); *Porteus v. O'Malley*, 2024 WL 2180203 at *4 (limitations assessed in newly-submitted opinion were inconsistent with limitations assessed in other opinions in the record). Indeed, as the ALJ summarized in his decision, plaintiff's mental health

15

treatment records demonstrated that plaintiff sought mental health treatment for a few months in 2019 due principally to situational stressors involving her housing and an ongoing dispute with her former roommate. (Tr. 56-57). The notes further reflected that after plaintiff's situational stressors stabilized, she was able to manage her mental health symptoms without further treatment and was discharged from care after attending a handful of appointments. (Tr. 584-643). The record does not reflect that plaintiff ever required medication to manage her mental health symptoms or sought any further mental health treatment after that brief period.

As discussed above, in reaching the severity determination, the ALJ considered the opinions of three different sources, one of whom met with and evaluated the plaintiff, and two of whom reviewed that examiner's opinion along with the mental health treatment records summarized above. Each of those consultants opined that plaintiff suffered from no more than mild limitations in her ability to engage in mental work-related functions. The ALJ found those opinions persuasive, concluding that they were supported by plaintiff's benign mental status examinations and consistent with plaintiff's minimal mental health treatment and the overall record, which established that plaintiff was able to engage in significant activities of daily living, including caring for her disabled daughter and volunteering part-time. (Tr. 56-58).

In sum, Wright's opinion and the limitations it assessed were unsupported by and inconsistent with other evidence in the record. In addition, as noted, the record before the ALJ included the fact that Wright had provided plaintiff with a six-month DSS work waiver at their first in-person session. For these reasons, I find there is no reasonable probability that consideration of Wright's opinion would have affected the ALJ's determination that plaintiff did not suffer from a severe mental health impairment. *See Lavette M.*, 2022 WL 17247243 at *6 ("because [p]laintiff has failed to establish that the new evidence would show a reasonable

probability of changing the ALJ's decision, the [c]ourt concludes that the ALJ's decision remains supported by substantial evidence"). In other words, even considering Wright's opinion, I find the ALJ's determination is supported by substantial evidence. *See Gauda*, 2024 WL 886595 at *3 ("[t]he [c]ourt finds no reason to conclude, even considering [the newly-submitted opinions], that there is a lack of substantial evidence to support the Commissioner's decision"); *Porteus*, 2024 WL 2180203 at *4 ("[w]e see no reason to conclude that, even considering [the newly-submitted opinion], substantial evidence does not support the ALJ's decision"); *George W. v. Comm'r of Soc. Sec.*, 2022 WL 3320866 at *5 ("[t]he ALJ's decision is affirmed under this analysis because it is supported by substantial evidence even in light of [the newly-submitted opinion]"). Accordingly, remand is not warranted.

## CONCLUSION

Upon review of the record, this Court finds that the Commissioner's denial of DIB/SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                         *s/Marian W. Payson*
                                         MARIAN W. PAYSON
                                       United States Magistrate Judge

Dated: Rochester, New York
       September 3, 2024